IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Ryan Fiacco** | ) |
| | ) |
| **Complainant,** | ) |
| | ) |
| v. | ) Civil Action No. 1:19-cv-03714 |
| | ) |
| **Robert Wilkie, Secretary,** | ) |
| **Department of Veterans Affairs,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) **JURY TRIAL DEMANDED** |

## COMPLAINT

**(Sex Discrimination; Retaliation)**

Pursuant to Federal Rule of Civil Procedure Rule 3, Complainant Ryan M. Fiacco (hereafter "Complainant"), by her undersigned attorney, hereby files his Complaint.

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction of the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e-5(f).

2. In or about July 11, 2016, Complainant filed a formal Charge of Discrimination in EEOC No. 570-2016-01428X with the EEOC.

3. The EEOC accepted Complainant's formal Charge of Discrimination as timely.

4. Defendant was duly notified about Complainant's administrative complaints and was given an opportunity to respond to his allegations.

5. On September 9, 2019, the EEOC made a decision on the merits of Complainant's

discrimination claims in favor of the agency.

6. Subsequently, Defendant issued Complainant a Final Order and Notice of Right to Sue dated September 13, 2019.

7. This Complaint is filed within 90 days after Complainant received the Notice of

Right to Sue on his EEOC complaint.

8. Complainant has exhausted the administrative remedies available to him under 42 U.S.C.

§§ 2000e, *et seq.*, and all conditions precedent have occurred or been performed.

9. Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§

1391(b)(1) and 1391(c), as Defendant Department of Veterans' Affairs (hereinafter

"Defendant") has extensive and deliberate contacts in this District, including a business

location in Washington, DC, at which Complainant performed work during his tenure with

Defendant.

## II. THE PARTIES

10. Complainant is a resident of the District of Columbia and a current employee of Defendant, working in the District of Columbia.

11. Defendant is an administrative agency formed under the Executive Branch of

the Federal Government.

## III. MATERIAL FACTS

1. Complainant is a homosexual male.

2. Complainant was initially assigned on a detail by Agency as a Congressional Relations Officer, GS-13, in the Office of Congressional and Legislative Affairs (hereinafter OCLA), from January 26, 2015 to May 17, 2015.

3. Complainant's performance was evaluated as exceptional during this detail and earlier by his prior supervisors, Lesia Mandiza and Eric Patterson.

4. In or about the first week of March 2015, Chris O'Connor and Lawrence Hinkin requested that Complainant apply for the open GS-14 level Congressional Relations Officer position.

5. Thus, Complainant began the Congressional Relations Officer with GS-14 responsibilities without consulting with O'Connor and Hinkin that the position was in fact GS-14 on May 17, 2015.

6. However, before this start date, Complainant verified with HR that he was qualified and eligible to begin as a GS-14.

7. On June 15, 2015, Chris O'Connor sent an email to employees noting that a 90-day window was opening for observation and assessment before the close of FY 2015.

8. Ronald Maurer, Complainant's supervisor, notified Complainant on August 25, 2015 that he has recommended Complainant for a promotion to GS-14.

9. On October 2, 2015, Maurer notified Complainant that O'Connor had denied his request/recommendation for Complainant's promotion.

10. O'Connor cited two alleged incidents where Complainant demonstrated a lack of judgment, despite praising Complainant for his excellent work performance.

11. These cited incidents were non-issues; Complainant followed Agency instructions in both interactions that were scrutinized by O'Connor.

12. On October 6, 2015, Complainant met with Maurer, Michelle Dominguez, and Suzanne Brick to discuss the refusal to promote Complainant.

13. Complainant had not received the performance standards for the GS-14 position he was seeking, so he was unable to determine what he needed to do to perform at the next level.

14. On October 7, 2015, Complainant filed an informal grievance.

15. On October 9, 2015, Complainant had a phone call with Tamika Hinton, in which Complainant communicated that he felt discriminated against due to his sexual orientation.

16. After Complainant communicated this to Hinton, her entire demeanor and tone changed in all subsequent interactions with Complainant.

17. Hinton also stopped providing Complainant with correct information and created a hostile work environment through rudeness.

18. On October 19, 2015, Maurer told Complainant to submit a self-evaluation, which Complainant swiftly submitted.

19. Maurer also stated that he was rescinding his support of Complainant's bid for a GS-14 position because while Complainant was technically qualified and eligible, he lacked the experience to receive support in favor of his request from officials even higher up the chain.

20. On October 27, 2015, Complainant met with Maurer, and Maurer informed Complainant that there was no performance rating for him because there were no performance standards.

21. Complainant filed a formal grievance.

22. On November 10, 2015, Complainant was told by Frank Morgan, another employee, that he overheard Hinton and O'Connor speaking about HR decisions and called homosexual individuals in the agency "fags" while chiding their "life-style" choices.

23. Hinton's bias against Complainant influenced O'Connor's decisions regarding Complainant's requested promotion.

24. On November 13, 2015, complainant received the disposition of the grievance, signed as determined by O'Connor, one of the individuals whose conduct was alleged to be improper in the complaint. This violates Agency protocol.

25. Complainant's formal grievance was disposed of with a decision that Complainant would be observed in performance of GS-14 duties for 90 days, and upon successful completion of the 90-day period, Complainant was to receive his promotion to GS-14.

26. Nonetheless, Complainant never received the promotion.

27. On August 1, 2016, Complainant requested a hearing before EEOC.

28. Complainant became unable to work due to his mental health condition.

29. Complainant was seen for mental health services from November 3, 2015, through present, due the stressful situations in the workplace. At the time, he was diagnosed with Adjustment Disorder, with Mixed Anxiety and Depressed Mood.

30. The patient was able to work in his new position while receiving periodic treatment, until stressors in his current position in addition to still dealing with the stressful situations for his prior positions stressful, became completely overwhelming to the point that his mental health deteriorated rapidly, to the point of being unable to work.

31. In July 2018, Complainant sought medical treatment for severe depression.

32. On March 15, 2019, Complainant's treating doctor, Dr. Benjamin Stearn III, MD, determined that Complainant was increasingly unable to work as a result of his depression, anxiety, and other conditions.

33. Complainant suffered significant emotional distress as a result of his treatment by his supervisors.

34. On September 4, 2019, the EEOC issued judgment in favor of the Defendant.

35. On September 9 2019, complainant was released from the Department of Veterans Affairs, because of an approved disability discharge/retirement from his federal position.

36. Complainant's release was granted by the U.S. Office of Personnel Management, and was directly due to his mental health condition, starting in 2015, due to the discrimination and retaliation in the workplace.

37. On September 13, 2019, the Department of Veterans Affairs issued a final order issuing the right to file a civil action within 90 days of receipt of the final order.

38. Complainant believes that Defendant refused to promote him due to discriminatory bias against his sexual preference.

39. Complainant also alleges that he was denied pay increases following his protected grievance activity.

40. As a result of Defendant's actions, Complainant has suffered loss of income, emotional distress, and pecuniary damages.

### IV.   Statement of Claims

### Count I: Sex Discrimination

41. Complainant adopts and incorporates by reference ¶¶ 1-40 above.

42. Defendant unlawfully discriminated against Complainant on the basis of his sex in violation of Title VII.

43. Employees of the Defendant specifically made discriminatory statements regarding Complaint's sexual orientation.

44. Following the comments, Complainant suffered adverse employment action when he was not selected for the promotion he was in fact qualified for.

45. As a result of Defendant's violation of Title VII, Complainant has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

## Count II: Retaliation

46. Complainant adopts and incorporates by reference ¶¶ 1-45 above.

47. Defendant unlawfully discriminated against Complainant when Defendant retaliated against Complainant for taking protected activity. After stating to management that he believed he was being treated poorly, and indicating that it was due to his sexual orientation, Complainant was treated differently than before and subsequent actions were taken against him, specifically the later denial of his pay increase

48. As a result of Defendant's violations of Title VII and retaliation, Complainant has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

## V. REMEDIES SOUGHT

49. WHEREFORE, Complainant respectfully requests that the Court issue a judgment granting him the following relief from Defendant:

    a. A declaratory judgment that defendant discriminated against Complainant, as alleged herein in Counts I and II;

    b. Back pay, including without limitation other lost benefits due to Defendant's discrimination against Complainant;

    c. Compensatory and punitive damages, pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a(a)(2), 1981a(b)(3)(A), for taking these actions

    with malice and bad faith;

d. Prejudgment and post judgment interest on all damages, on the lost compensation and compensatory damages;

e. Reasonable attorneys' fees and costs under 42 U.S.C. §§ 1981a, 2000e-5(k); and

f. Such other and further relief as to the Court seems just and warranted.

## VI. **JURY TRIAL DEMAND**

50. Complainant requests a jury trial on all issues of fact and damages arising herein.

    Respectfully submitted,

*Matthew Hunter*

---

MATTHEW HUNTER (DC Bar No 1510741)
Simply Law, LLC
3 Bethesda Metro Center, Suite 700
Bethesda, MD 20814
T: (202) 630-5123
matthew@simplylawllc.com
Attorney for Complainant