UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN FIACCO,<br><br>    Plaintiff,<br><br> v.<br><br>DEPARTMENT OF VETERANS AFFAIRS,<br><br>    Defendant. | Case No. 19-cv-3714 (JMC) |

## MEMORANDUM OPINION

Plaintiff Ryan Fiacco[1] sues his former employer, the Department of Veterans Affairs (VA), alleging that the agency discriminated and retaliated against him because of his sexual orientation. ECF 1.[2] The VA moves for summary judgment. ECF 20. Because the VA has proffered legitimate, non-discriminatory, non-retaliatory reasons for its actions and Fiacco has failed to show that those proffered reasons are pretextual, the Court will **GRANT** the VA's motion.

**I. BACKGROUND**

 **A. Factual Background**

The VA submitted a statement of material facts, ECF 20-2, which Fiacco failed to dispute or otherwise respond to, *see* ECF 23. He did not offer his own statement of material facts, nor did he contest the VA's facts in his opposition. *See* ECF 23. "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the . . . opposition to the motion."

---

[1] Although Fiacco is currently proceeding *pro se*, he was represented by counsel while the case was being briefed. *See* ECF 26, 27.

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

Loc. Civ. R. 7(h)(1); *see Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) ("[T]he district court is to deem as admitted the moving party's facts that are uncontroverted by the nonmoving party[].") The Court therefore accepts the VA's statement of material facts as undisputed for purposes of this motion.

Fiacco, who self-identifies as a homosexual man, served as a Congressional Relations Officer (CRO) in the VA's Office of Congressional and Legislative Affairs (OCLA). ECF 1 at 2 ¶ 1; ECF 20-2 ¶ 1. Fiacco was initially assigned to OCLA on detail, but in May 2015 he applied for and received a permanent CRO position. ECF 20-2 ¶¶ 1, 4–5. Based on the amount of time he had worked for the agency, Fiacco was brought on as a GS-13 CRO.[3] *Id.* ¶¶ 4–5. His first-line supervisor was Lesia Mandzia. *Id.* ¶ 6. In June 2015, Fiacco asked to move to OCLA's Congressional Outreach Team. *Id.* ¶ 7. The VA granted that request, and Dr. Ronald Maurer became his new supervisor. *Id.*

Per VA policy, supervisors must issue an employee's performance standards within 60 days of the employee joining the office. *Id.* ¶ 59. (Absent performance standards, an employee cannot receive a performance rating. *See* ECF 20-13 ¶¶ 2–3.) Because Fiacco joined OCLA in May 2015, he should have received his performance standards by July 2015. ECF 20-2 ¶ 60. But, according to the VA, the agency failed to issue his performance standards because of an administrative error. *See id.* ¶ 73. Around the time that Fiacco should have received his performance standards, OCLA was restructured and Fiacco switched teams. *Id.* ¶¶ 61–62. Dr. Maurer incorrectly believed that Fiacco's former supervisor, Mandzia, was supposed to issue his performance standards, and therefore failed to issue them himself. *Id.* ¶ 63. Other VA

---

[3] "The General Schedule (GS) classification and pay system covers the majority of civilian white-collar Federal employees" and "has 15 grades—GS-1 (lowest) to GS-15 (highest)." U.S. Off. of Pers. Mgmt., *General Schedule*, https://perma.cc/9Y7J-AMPS.

2

employees did not receive their performance standards due to similar administrative errors. *Id.* ¶ 73.

Soon after he was hired, Fiacco sought a promotion from GS-13 to GS-14. *Id.* ¶ 10. Dr. Maurer initially planned to recommend that Fiacco be promoted, but changed his mind after speaking with Christopher O'Connor (Fiacco's third-line supervisor) about past work performance issues that "demonstrated [Fiacco]'s lapses in judgment and lack of overall preparedness [for] the level of supervision required for a GS-14 CRO." *Id.* ¶¶ 12, 15, 20. Specifically, Fiacco had been unprepared to brief a high-level VA official for a meeting with a congressmember and had "released sensitive information to Senator Marco Rubio's office without first clearing it within OCLA." *Id.* ¶¶ 21–26. In light of this information, Dr. Maurer "decided that he would no longer recommend [Fiacco] for a promotion." *Id.* ¶ 16.

On October 6, 2015, Fiacco met with Dr. Maurer, second-line supervisor Michelle Dominguez, and Human Resources (HR) liaison Suzanne Brick. *Id.* ¶ 17. They informed Fiacco that he would not be promoted to GS-14 because of the work performance issues detailed above. *Id.* ¶¶ 18–20. Fiacco also told his supervisors that he had not received his performance standards. *Id.* ¶ 33.

On October 7, 2015, Fiacco filed an informal grievance about his non-promotion. *Id.* ¶ 35. On October 9, he spoke with HR representative Tamika Hinton and told her that he believed he was being discriminated against because of his sexual orientation. *Id.* ¶ 36. Hinton told Fiacco that he could file an Equal Employment Opportunity (EEO) complaint and gave him the relevant contact information. *Id.* ¶¶ 37–38. After learning that Fiacco never received his performance standards, Hinton "informed OCLA management that [he] should have been given his performance standards." *Id.* ¶ 66. OCLA management believed that it could fix this problem by adopting the

3

rating Fiacco's previous supervisor had given him while he was working on a different team within the VA, which would allow OCLA to give Fiacco a performance review. *Id.* ¶ 69; *see* ECF 20-13. However, OCLA was ultimately unable to do so because Fiacco's prior job duties were substantially different from his new responsibilities. ECF 20-2 ¶ 71.

On October 15, Dr. Maurer met with Fiacco and explained that he would not recommend that Fiacco be promoted to GS-14. *Id.* ¶ 40; ECF 20-15 at 15. Dr. Maurer told Fiacco that although he met the minimum requirements for a promotion, he lacked sufficient experience in the CRO position. ECF 20-2 ¶ 41; ECF 20-15 at 15.

Fiacco filed a formal grievance about his non-promotion on October 27. ECF 20-2 ¶ 43. He attended a formal grievance meeting on November 6, 2015, joined by his counsel, Hinton, and O'Connor. *Id.* ¶ 46. O'Connor explained that Fiacco's past performance issues (which the team had discussed during the October 6 meeting) demonstrated that he was not ready for a promotion. *Id.* ¶ 47. On November 13, O'Connor issued a formal decision on Fiacco's grievance. *Id.* ¶ 49. The decision provided that if Fiacco demonstrated acceptable performance for 90 days (from November 13, 2015 until February 11, 2016), O'Connor would approve his promotion to GS-14. *Id.* ¶ 51.

Before the 90-day period ended, Fiacco left OCLA to take another GS-14 position in the VA. *Id.* ¶ 58. Because the agency never issued Fiacco his performance standards, he did not receive a performance evaluation for fiscal year 2015. *Id.* ¶ 72.

### B. Procedural History

Fiacco filed this suit in December 2019 after exhausting his administrative remedies. ECF 1 at 2 ¶ 8. He alleges that the VA discriminated and retaliated against him because of his sexual orientation, in violation of Title VII, 42 U.S.C. § 2000e, *et seq*. *Id.* ¶¶ 41–48. The VA

moved to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF 7. The Court (Cooper, J.) denied the motion on the record, *see* Nov. 2, 2020 Minute Order, and the VA filed an answer, ECF 10. After discovery concluded, the VA moved for summary judgment. ECF 20. The motion is now fully briefed. ECF 23, 24.

## II.     LEGAL STANDARD

The Court will grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

A party that moves for summary judgment must support its factual positions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that burden, it falls to the nonmoving party to establish that a genuine dispute exists regarding a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). To do so, the nonmoving party must demonstrate that "there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party." *Talavera*, 638 F.3d at 308. The nonmoving party must produce more than a "scintilla of evidence" in support of its positions, *id.*, and its evidence must consist of more than unsupported allegations or denials. *See Celotex*, 477 U.S. at 321 n.3, 322. If the evidence the non-moving party

cites is "merely colorable" or "not significantly probative," summary judgment may be granted in favor of the moving party. *Anderson*, 477 U.S. at 249–50.

In making their arguments for or against summary judgment, both parties are responsible for pointing the Court to specific evidence in the record that supports their positions. Fed. R. Civ. P. 56(c)(1)(A); *see also Potter v. District of Columbia*, 558 F.3d 542, 550 (D.C. Cir. 2009). "[E]vidence laying dormant in the record is not enough." *Potter*, 558 F.3d at 550. "[T]he district court is not obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make its own analysis . . . of what may, or may not, be a genuine issue of material disputed fact." *Id.*

## III.   ANALYSIS

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and from retaliating against an employee for "oppos[ing] any practice" made unlawful by Title VII, *id.* § 2000e-3(a). Courts generally evaluate Title VII discrimination and retaliation claims using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that scheme, a plaintiff must first establish a prima facie case of discrimination (or retaliation); the burden then shifts to the employer to present a legitimate, nondiscriminatory justification for the challenged action. *See, e.g.*, *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006). However, once (a) an employee has established an adverse employment action, and (b) the employer has responded by articulating a legitimate, nondiscriminatory reason for that action, the *McDonnell Douglas* framework falls away. *Figueroa v. Pompeo*, 923 F.3d 1078, 1086–87 (D.C. Cir. 2019). Instead, the court simply asks: "[h]as the employee produced sufficient evidence for a reasonable

jury to find that the employer's asserted nondiscriminatory reason was not the actual reason[,] and that the employer intentionally discriminated [or retaliated] against the employee?" *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see also Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (applying *Brady* to retaliation claims).

To show that the employer's stated reasons were pretextual, a plaintiff may cite "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or [its] poor treatment of other employees in the same protected group . . . or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015). In the context of retaliation, "[t]he temporal proximity between an employee's protected activity and her employer's adverse action is a common and often probative form of evidence of retaliation," *id.*, although temporal proximity without more is insufficient to survive summary judgment, *see Minter v. District of Columbia*, 809 F.3d 66, 71–72 (D.C. Cir. 2015) ("[W]hen an employer comes forward with a legitimate, nonretaliatory reason for an employment action, 'positive evidence beyond mere proximity' is required 'to create a genuine issue of material fact concerning whether the motive for [an adverse employment action] was . . . retaliation.'" (quoting *Solomon v. Vilsack*, 763 F.3d 1, 16 (D.C. Cir. 2014))).

Fiacco argues that the VA discriminated and retaliated against him by (1) failing to promote him, and (2) failing to issue his performance standards. ECF 23 at 5–9. The Court turns first to discrimination and then to retaliation, concluding that the VA is entitled to summary judgment on both counts.

A. **Discrimination (Count I)**

   1. *Failure to Promote*

The VA contends that it decided not to promote Fiacco to GS-14 because of his poor performance, not because of his sexual orientation. ECF 20-1 at 20. Fiacco does not dispute that he was unprepared to brief a high-level VA official for a meeting with a congressmember, and that he released sensitive information to a senator's office without appropriate clearance. ECF 20-2 ¶¶ 21–32; *see generally* ECF 23. Nor does he dispute that, after learning of these missteps, Dr. Maurer "concluded that [Fiacco] did not demonstrate the level of judgment expected of a GS-14" and decided not to recommend him for a promotion. ECF 20-1 at 15; ECF 20-2 ¶¶ 11–16; *see generally* ECF 23. "[D]issatisfaction with an employee's performance and identifying specific examples of the employee's inadequate performance is a legitimate, non-discriminatory reason for an adverse action." *Hogan v. Hayden*, 406 F. Supp. 3d 32, 44 (D.D.C. 2019) (citing *Paquin v. Fed. Nat'l Mortg. Ass'n*, 119 F.3d 23, 29 (D.C. Cir. 1997)). The burden therefore shifts to Fiacco to show that the VA's asserted reasons for the non-promotion were pretextual. *See Brady*, 520 F.3d at 494.

Fiacco identifies no record evidence that suggests pretext. *See* ECF 23 at 6. He asks the Court to consider an affidavit from OCLA employee Jeremy Dillard that, per Fiacco, "suggests that [O'Connor] has a history of bias against homosexual VA employees and presided over an OCLA environment where such discriminatory activity went on unpunished." *Id.*; *see* ECF 23-1. But Fiacco never disclosed Dillard as a witness in discovery, and the VA represents that it learned about this witness for the first time when Fiacco submitted Dillard's affidavit as an attachment to his opposition brief. *See* ECF 20-21 (Plaintiff's initial disclosures); ECF 24 at 9. "If a party fails to provide information or identify a witness as required by [the Federal Rules of Civil Procedure],

the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also* LCvR 26.2(a) ("A party that without substantial justification fails to disclose information . . . is not, unless such failure is harmless, permitted to use as evidence . . . on a motion any witness or information not so disclosed."). "The burden is on the party facing sanctions to prove that its violation was either substantially justified or harmless." *Elion v. Jackson*, 544 F. Supp. 2d 1, 6 (D.D.C. 2008). Fiacco has not carried that burden. He states only that the affidavit is "relevant," and makes no attempt to argue that his failure to properly identify Dillard as a witness is "substantially justified" or "harmless." ECF 23 at 6–7. Given the "overwhelming weight of authority" that "preclusion [of the improper evidence] is required and mandatory absent some unusual or extenuating circumstances," the Court declines to consider Dillard's affidavit. *Norden v. Samper*, 544 F. Supp. 2d 43, 50 (D.D.C. 2008) (quoting *Elion v. Jackson*, No. 05-CV-992, 2006 WL 2583694, at *1 (D.D.C. Sept. 8, 2006)).[4]

### 2. *Failure to Issue Performance Standards*

The VA claims that it failed to issue Fiacco's performance standards (and therefore, failed to give him a performance review) due to administrative error. ECF 20-1 at 15. Fiacco does not dispute the following facts. First, around the time that he should have received his performance standards, OCLA was restructured and Fiacco joined a new team where he had a new supervisor. ECF 20-2 ¶¶ 61–62. Second, Dr. Maurer incorrectly believed that Fiacco's former supervisor,

---

[4] And even if Dillard's affidavit was properly before the Court, it does not help Fiacco's case. Dillard avers that someone named Alma Bourne made homophobic comments about him, that he filed a complaint, that O'Connor knew about the complaint, and that Dillard is not aware of any consequences that Bourne faced as a result of her statements. *See* ECF 23-1. But these events occurred in 2018, roughly three years after Fiacco left OCLA. *See id.* The affidavit contains no information about who Bourne is or what relationship Bourne had to either Dillard or O'Connor. *See id.* No party has identified anyone named Alma Bourne as having anything to do with the employment actions at issue in this case. Thus, even if the Court could properly consider the affidavit, it would not alter the Court's analysis.

Mandzia, was supposed to issue his performance standards. *Id.* ¶ 63. And third, other VA employees did not receive their performance standards due to similar administrative errors. *Id.* ¶ 73. These undisputed facts support the VA's argument that its failure to issue Fiacco's performance standards was an unfortunate mistake, not a discriminatory act. *See Diggs v. Potter*, 700 F. Supp. 2d 20, 43–44 (D.D.C. 2010) (concluding that administrative error was a legitimate, non-discriminatory reason for employer's action); *see also Hernandez v. Pritzker*, 741 F.3d 129, 135 (D.C. Cir. 2013) (noting that an action taken to correct a clerical error "would not tend to prove . . . retaliatory intent."). Because the VA has offered a legitimate, non-discriminatory reason for its failure to issue performance standards, the burden shifts to Fiacco to raise evidence of pretext. *See Brady*, 520 F.3d at 494.

Fiacco first argues that the VA has changed its stated reason for failing to issue his performance standards, arguing that the agency did not mention administrative error in its motion to dismiss.[5] ECF 23 at 5. Although an employer's "inconsistent or dishonest explanations" can indicate pretext, *Walker*, 798 F.3d at 1092, the VA's explanations have not, in fact, been inconsistent. It is undisputed that OCLA management and Human Resources recognized the agency had made a mistake. When Hinton learned that Fiacco had not received his performance standards, she informed OCLA management that this was an error—that Fiacco "should have been given his performance standards." ECF 20-2 ¶ 66. OCLA management tried to fix its error by adopting the rating Fiacco's previous supervisor had given him, but was ultimately unable to do so. *Id.* ¶¶ 69–71. In defending against Fiacco's complaint before the Equal Employment

---

[5] Fiacco initially states that "a reasonable jury could conclude that Defendant['s] ever-changing reasons for *non-promotion* [and] withholding of performance standards . . . demonstrates pretext." ECF 23 at 5 (emphasis added). But the remainder of his discussion is confined to the agency's administrative error rationale—which is only relevant to Fiacco's performance standards, not to his non-promotion. *See id.* The agency does not argue that it failed to promote Fiacco due to administrative error. The Court therefore engages with Fiacco's "ever-changing reasons" argument only in the context of his performance-standards claim.

Opportunity Commission (EEOC), the VA's evidence told the same story: that its failure to issue Fiacco's performance standards was an administrative error. *See* ECF 20-11 at 8 (Hinton's EEOC affidavit, stating that OCLA's failure to issue performance standards was "an administrative error" and "an oversight" that "shouldn't have happened"); ECF 20-13 at 2 (VA HR Specialist Rodney Butler's EEOC affidavit, stating that OCLA "contacted [him] for guidance on how to rectify an error . . . specifically, Mr. Fiacco not receiving his performance standards, and subsequently, no performance evaluation."). And it is unsurprising that the VA did not raise administrative error in its motion to dismiss given that neither party discussed OCLA's failure to issue performance standards at the motion-to-dismiss stage, *see* ECF 7, 8, 9—and, regardless, the VA was required to confine its arguments at that stage of the litigation to the four corners of Fiacco's complaint. Accordingly, Fiacco has identified no evidence that the VA has changed its explanation for failing to issue his performance standards.

Next, Fiacco argues that the VA violated its own procedures by failing to issue his performance standards, and that an employer's deviation from its established policies can be evidence of pretext. ECF 23 at 5; *see Walker*, 798 F.3d at 1092. There is no factual dispute here: the VA admits that it violated its own policy. ECF 24 at 12. However, even "[a] procedurally flawed [employment action] is not evidence of pretext if 'the employer honestly believes in the reasons it offers.'" *Johnson v. District of Columbia*, 99 F. Supp. 3d 100, 106 (D.D.C. 2015) (quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)), *aff'd*, 688 F. App'x 4 (D.C. Cir. 2017). Here, as detailed above, the VA has consistently stated that its failure to follow its own policy was an administrative error, and Fiacco points to no record evidence from which a jury could find that the VA does not "honestly believe" in that reason. *See id.*; ECF 23 at 5–6; *Johnson*, 688 F. App'x at 7 (holding that plaintiff could not survive summary judgment

11

where he "point[ed] to evidence that his . . . supervisor improperly evaluated him," but "provide[d] no basis for concluding . . . that the procedural violation is evidence of . . . discrimination.").[6]

\* \* \*

Because Fiacco has not produced evidence that would allow a reasonable jury to conclude that the VA's asserted nondiscriminatory reasons for its actions are mere pretext, the VA is entitled to summary judgment on Count I. *See Brady*, 520 F.3d at 494.

### B. Retaliation (Count II)

Fiacco seems to argue that he engaged in protected activity by filing a grievance about his non-promotion in October 2015, and that O'Connor retaliated against him in November 2015 by sustaining the non-promotion decision. *See* ECF 23 at 8–9. As explained above, the VA has offered a legitimate, non-retaliatory reason for deciding not to promote Fiacco: poor performance. ECF 20-1 at 15. The burden now shifts to Fiacco to show that the VA's asserted reason for the non-promotion is pretextual. *See Brady*, 520 F.3d at 494.

Fiacco makes two arguments. First, he asks the court to consider statements made by another VA employee, Frank Morgan. *See* ECF 23 at 8; ECF 20-1 at 16. In Fiacco's affidavit, he states that Morgan told him that "Tamika Hinton had called homosexuals 'fags' in the workplace and spoke against their 'life style.'" ECF 20-4 at 7. But Hinton's remarks—however troubling— are immaterial here. It is undisputed that "Hinton was not the deciding official regarding [Fiacco's] grievance." ECF 20-2 ¶ 55. "[S]tray remarks in the workplace . . . made by nondecision-makers" are not evidence of discrimination (or here, retaliation). *Oviedo v. WMATA*, 299 F. Supp. 3d 50, 59 (D.D.C. 2018), *aff'd*, 948 F.3d 386 (D.C. Cir. 2020).

---

[6] The (undisputed) fact that other VA employees did not receive their performance standards due to similar administrative errors, *see* ECF 20-2 ¶ 73, also suggests that the VA did not "single out" Fiacco for discrimination, *see Johnson*, 99 F. Supp. 3d at 110 (simply demonstrating that a program was poorly executed "is not evidence that [the employer] singled [the plaintiff] out for discriminatory treatment" because of his protected characteristic).

Second, Fiacco argues that "the extreme temporal proximity" between his October grievance and the November decision is evidence of retaliation. *See* ECF 23 at 8–9. However, it is undisputed that Fiacco's supervisors chose not to promote him in October 2015, *before* Fiacco engaged in any protected activity. *See* ECF 20-2 ¶¶ 18–20, 35. The November decision to sustain Fiacco's non-promotion was just the final step "of a nondiscriminatory process that began before the protected conduct." *Salak v. Pruitt*, 277 F. Supp. 3d 11, 27 (D.D.C. 2017) (quoting *Bush v. Engleman*, 266 F. Supp. 2d 97, 103 (D.D.C. 2003)), *aff'd sub nom. Salak v. Wheeler*, No. 17-5231, 2018 WL 4148517 (D.C. Cir. Aug. 1, 2018). "Employers need not suspend previously planned [employment actions] upon discovering that" the employee has engaged in protected activity, "and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). Therefore, the temporal proximity between the October and November meetings does not help Fiacco's case.

It is unclear whether Fiacco believes that the agency's failure to issue his performance standards was an act of retaliation. *See generally* ECF 23. But even if Fiacco had clearly made that argument, it would suffer from the same flaw: the administrative error that prevented Fiacco from receiving a performance evaluation predated his protected activity by at least three months. ECF 20-1 at 14; *see* ECF 20-2 ¶¶ 36, 60, 63–64.

Finally, Fiacco states that he "was retaliated against when he was constructively terminated." ECF 23 at 1, 5. Constructive discharge "requires a finding of discrimination and the existence of certain 'aggravating factors.'" *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997) (quoting *Clark v. Marsh*, 665 F.2d 1168, 1174 (D.C. Cir. 1981)). Because the Court has rejected Fiacco's discrimination claims, there are no "discriminatory acts upon which

[he] could rest his constructive discharge claim." *Id.* And even if Fiacco had prevailed on his discrimination claims, he has pointed to no record evidence that the VA subjected him to an "abusive working environment . . . so intolerable that h[is] resignation qualified as a fitting response," as required for constructive discharge. *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008). Thus, to the extent that Fiacco suggests he was constructively discharged in retaliation for his protected activity, that argument cannot succeed.

Because Fiacco has produced no evidence to suggest that the VA failed to promote him, constructively discharged him, or took any other adverse action because he engaged in protected activity, the agency is entitled to summary judgment on Count II. *See Brady*, 520 F.3d at 494.

\* \* \*

For the foregoing reasons, Defendant's motion for summary judgment, ECF 20, is **GRANTED**, and the case is **DISMISSED.** A separate order accompanies this memorandum opinion.

**SO ORDERED.**

                                                                              _____
                                                                              JIA M. COBB
                                                                              United States District Judge

Date: September 26, 2024